UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE GUERRERO, et al., | ) 1:06-cv-01539-LJO-SMS |
| Plaintiffs, | ) ORDER GRANTING IN PART DEFENDANT |
| v. | ) TAKATA SEAT BELTS, INC.'S MOTION |
| | ) TO COMPEL PLAINTIFFS TO PRODUCE |
| GENERAL MOTORS CORPORATION, et al., | ) SEATBELT FOR FURTHER INSPECTION |
| | ) AND TESTING (DOC. 42) |
| Defendants. | ) ORDER GRANTING DEFENDANT TAKATA'S |
| | ) MOTION TO STRIKE MATERIAL (DOC. |
| | ) 59) |

Plaintiffs are proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302(c)(1) and 72-303.

Pending before the Court is a motion to compel production and further testing of a seat belt filed by Defendant Takata Seat Belts, Inc. (Takata), on August 29, 2007, including a joint statement of discovery dispute; declarations of Robert Gratzinger, Michael Belcher, William Broadhead, and Douglas Gordon, and all exhibits attached thereto; and the objections of Defendant Takata Seat Belts, Inc. The Court has viewed still photography and a DVD of x-rays of the seat belt.

On September 21, 2007, Defendant's motion came on regularly for hearing at 9:30 a.m. in Courtroom 7 before the Honorable

1

Sandra M. Snyder, United States Magistrate Judge. Eugene M. Genson and Michael Belcher appeared on behalf of Defendant Takata; Anthony S. Thomas appeared on behalf of Defendant General Motors Corporation; and Douglas L. Gordon appeared on behalf of Plaintiffs. After argument and observation of the seat belt by the Court, the matter was submitted to the Court for decision.

I. <u>Motion to Compel Production of Seatbelt for Further Testing</u>

In this action for damages resulting from an automobile accident, Plaintiffs claim that at the time of impact, the seatbelt retractor mechanism jammed, and the belt's webbing slipped off the spool and became entangled with retractor teeth that are stamped into the retractor frame immediately adjacent to the spool. Plaintiffs allege that the absence of any separation of the retractor teeth, on the one hand, and the belt or webbing material on the other, constitutes a design defect. Plaintiffs contend that the present condition of the belt, namely, the engagement between the webbing and the retractor teeth, is clearly visible and is documented in photographic evidence. (Gordon Decl., Ex. 4 [photos]; Broadhead Decl. [video of the inspection of October 16, 2006].)

Defendants dispute the claim of a defective belt design and also dispute that the engagement of the webbing and the teeth has occurred or is visible. (Decl. of Michael Belcher, Ex. F [video of x-rays of seatbelt and retractor taken on August 4, 2007]; Gratzinger Decl.) Defendants acknowledge that the webbing is off-center on the spool and seek to compel Plaintiffs to produce the seatbelt to allow Defendants to unroll the belt in order to

2

determine whether the webbing is engaged with the retractor teeth and, if so, whether the cause is engagement of some sort with the locking retractor teeth, a twist or twists in the webbing that was introduced on to the retractor spool, or some other factor or factors. Further, Defendants seek to determine how the belt, which Plaintiffs claim had been stuck for about six weeks before the accident, could have auto-retracted an estimated five to seven inches during an inspection carried out on July 27, 2006.

Because the inspection and testing that the Defendant Takata seeks to perform will irrevocably change the condition of the belt, including the ability of an observer to see the meeting of the webbing and the spool in its present condition, the Court has determined to evaluate the request with the standards applicable to destructive testing pursuant to Fed. R. Civ. P. 34(a)(1).

Further, in connection with this motion, the Court notes Plaintiffs' request to take judicial notice of the substance and contents of an order dated October 3, 2002, rendered in the Davis case in Placer County, concerning Defendants' expert, Gratzinger. (Gordon Decl., Ex. 1.) The Court further notes the objection of Defendant Takata and motion to strike the references to the material referring to the Davis case. It appears that the order of October 3 was vacated and sealed, and there was a specific prohibition against anyone's citing the order as a decision of the court or source of reliance. The Court denies the request for judicial notice and grants Defendant's motion to strike the materials pertaining to the Davis case.

State courts have described the pertinent test as a balancing of the costs of irreversibly altering the object and

the benefits of obtaining the evidence sought in the case, with consideration being given to lessening the costs by the use of safeguards, photography of the item in the pre-testing condition, and by searching for alternative, non-destructive means of obtaining the desired evidence; the court should consider whether the testing is reasonable and necessary. <u>Cameron v. District Court</u>, 193 Colo. 286 (1977).

An instructive federal case is <u>Mirchandani v. Home Depot, U.S.A., Inc.</u>, 235 F.R.D. 611 (D.Md. 2006), in which the court determined that pursuant to Rule 34(a)(1), the plaintiff buyers who sought damages for injuries sustained from an allegedly defective ladder could conduct metallurgical and hardness tests on a bolt from the ladder. There the court summarized the analysis that is appropriately undertaken with respect to problems of destructive testing as follows:

> Based on the discussion in <u>Cameron</u>, the undersigned identifies four specific inquiries relevant to the balancing test. They are: 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

<u>Mirchandani</u>, 235 F.R.D. at 614.

Here, Defendants seek to examine the webbing and pull on it incrementally at five-inch lengths to see if it can be moved, and, if so, whether the webbing will be retracted; Defendants seek then to drill a hole in the plastic housing on the outside

4

1  of the retractor frame to release the ALR lever,[1] which would
2  allow gradual and full unspooling of the webbing. The things that
3  are possibly to be learned from the inspection and testing
4  involve the condition of the webbing, including the presence or
5  absence of any anomalies in the webbing and any marks or evidence
6  of involvement with the teeth, the orientation of the webbing on
7  the spool, and further to permit documentation of the condition
8  and orientation of the webbing in all respects.
9       Although it may be, as Broadhead declares, that the position
10 of the webbing and any engagement of any teeth may be ascertained
11 from measurements, it does not appear that the actual condition
12 of the webbing that is not visible right now may be ascertained
13 without unspooling the belt. The parties dispute the importance
14 of the position of the belt at the time of the accident, whether
15 or not engagement of teeth in the webbing occurred and inhibited
16 the ability of the belt to retract, and the interaction of the
17 belt with, and the effect of, the ALR system on the belt's
18 operation. All these issues are related to the question of the
19 cause/s of the condition and operation of the belt at the
20 pertinent time, a matter material and essential to the
21 Defendant's defense as well as to the Plaintiff's claim. The
22 testing is likely to tend to show what the cause of any failure
23 of the belt was, and thus it is relevant.
24      The Court finds that the testing is reasonable, necessary,
25 and relevant to proving Defendant's case.
26      With respect to whether or not the non-movant's ability to

---

[1] The ALR function locks the belt to facilitate a secure and snug connection during use with carseats for minor passengers.

5

present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way, Plaintiffs seek to present the belt and retractor in their present condition to the jury. The Court observed the seat belt at the hearing, including the portion of the belt that may be observed by one's looking into the small space inside the seat belt retractor mechanism where an edge of the webbing is near, next to, or under what appear to be tiny teeth. It is very difficult to describe the precise interaction of the belt and the teeth. From the Court's observation as well as from the radically differing conclusions drawn by the declarants in this case, it is clear to the Court that persons observing the interior of the mechanism and the belt might come to different conclusions regarding the condition of the belt and the extent to which the belt and teeth are engaged, if at all. Further, after observing the best still photographic images of the retractor and belt, the Court concludes that the photographs do not adequately represent what can be seen, and they do not provide a satisfactory substitute for actual viewing of the belt in the retractor. The Court has also viewed the DVD supplied at the hearing entitled "X-Rays Of Accident/Retractor 8/4/07" filmed by Image Quest Plus LLC. With all due respect to the best efforts and intentions of all counsel as well as the technicians who performed the x-ray version of cinema verite, the Court was fairly certain she was viewing psychedelic black-and-white pop art, incapable of any description whatsoever. Acknowledging that an expert and/or a technician and/or legal counsel would make every effort to explain and clarify what was being viewed, it is this Court's strong opinion that a lay jury

6

1  will struggle as much with this DVD as with the still
2  photographs. This has to do with the unique circumstances of this
3  case, including the fact that the phenomenon in question, namely,
4  the extent of engagement of the belt and teeth, involves
5  perception of depth and not just a flat image, in a very small
6  space; the fact that few individuals would have had any
7  experience in observing the workings of seat belt retractors; and
8  the fact that it is very difficult for an observer of the
9  photographs and DVD to orient himself or herself properly with
10 respect to the actual appearance and operation of the belt
11 itself.
12      Because of this, the Court acknowledges the argument that
13 the testing would result in irreversible alteration of the
14 evidence. Plaintiff's ability to present the most direct, and
15 arguably the only adequate, evidence of the present condition of
16 the belt would be lost if this testing is allowed.
17      It has been asserted that the belt in its present condition
18 is not sufficiently important to obstruct testing because the
19 belt in not presently in the condition in which it was at the
20 time of the accident. The position of Plaintiffs is that for
21 about six weeks before the accident, the seat belt was stuck and
22 would not move or retract. Apparently there were no photographs
23 taken immediately after the accident, which occurred on April 6,
24 2006. However, the belt was observed and photographed on May 17,
25 2006, with the belt stuck in position. (Del. of Belcher, Ex. J.)
26 During an inspection on July 27, 2006, in the presence of GM
27 engineers and counsel, but without the presence of any
28 representative to Defendant Takata, the belt "auto-retracted" an

7

estimated five to seven inches onto the retractor spool, and this may have added one to two layers of webbing around the retractor spool. (Id., Ex. K.) On October 6, 2006, the belt was removed from the vehicle; Plaintiffs found that it then had webbing unevenly spooled in the retractor, off the edge of the retractor spool, and caught in the retractor teeth. On October 16, 2006, while being videotaped, engineer David Peruski unclasped the spring clips holding the webbing in place and pulled upward to see if he could extract the webbing, which caused the so-called auto-retraction. The suit was filed on October 30, 2006; thereafter, Plaintiffs decided to add Takata, the designer and manufacturer of the belt, as a defendant. Defendant Takata was first permitted a visual inspection on May 23, 2007; on August 4, 2007, the seat belt and retractor were x-rayed.

     The Court is not persuaded by the argument or evidence that because some change in the condition of the belt has occurred, the present condition of the belt is not sufficiently important to preserve. See, Mirchandani at p. 615. The Court concludes that all the available evidence as to the condition of the belt at each successive stage during the development of this controversy and lawsuit is material and relevant; the past and present condition of the belt, as can be ascertained by all pertinent discovery, is key evidence with respect to the Plaintiff's claim as well as Defendant's defense, and is the best available evidence from which experts may be able to determine what transpired during the accident. The Court has before it expert opinion to this effect, and at this point, the parties must be permitted to allow their experts to obtain the data they seek in

8

order to formulate their opinions. The fact that there was an "auto-retraction" may complicate or may shed light on the precise mechanisms and processes at work; however, it would be inappropriate for the Court to conclude at this juncture and on the basis of what is now before it that in view of the "auto-retraction," the present condition of the belt is of such diminished importance that it is not worth preserving.

With respect to the availability of a less prejudicial, alternative method of obtaining the evidence, there does not appear to be any way to discover the facts concerning the condition of the belt and any undiscovered indicia of the processes that were at work on it without actually unspooling or unrolling the belt.

In summary, because the testing is reasonable, necessary to determine a central issue, and relevant, it should be permitted. However, there does not appear to be any effective way of preserving the present evidence, namely, the present condition of the belt in the retractor, during the testing.

The undersigned Magistrate Judge has conferred with the trial judge and concludes that the only possible way to preserve the weighty interests of each side in preserving the evidence and discovering the truth is to permit the trier of fact in this case to observe the seatbelt in its present condition, and then to permit the Defendants' experts thereafter to undertake the inspection and testing they seek to conduct, and to have the Court consider and permit any follow-up processes thought to be necessary by any party. This will require the cooperation of the parties, their counsel, and their experts to permit the testing

9

1 to occur within a short time-frame and to anticipate and estimate
2 any follow-up processes; it will also require the parties
3 presently to consider the entire course of discovery remaining in
4 the case in order to assure that the remainder of the case is
5 ready to be tried before the trial commences, and to proceed with
6 a minimum of disruption of the resources of the Court and the
7 parties.
8      In that regard, the fourth consideration, namely, adequate
9 safeguards to minimize any prejudice from the testing, is of even
10 greater importance than in the usual case. The safeguards
11 suggested in Mirchandani, 235 F.R.D. at 617, include an adequate
12 opportunity to photograph or otherwise record or document the
13 condition before testing; notice to nonmovants regarding the
14 testing time, manner, and place; a reasonable opportunity to
15 observe, record, participate in, and share the results and costs
16 of testing; and any follow-up determined to be necessary under
17 the circumstances, such as granting the non-movants leave to
18 depose the movants' experts, and any others substantially
19 involved in the performance of the tests, about the testing
20 procedures and results of the test.
21      The protocol suggested by Defendant Takata includes constant
22 videotaping of the process as well as each party's own still
23 photography, to be shared among the parties; identification of
24 the consultants to engage in the inspection and testing process;
25 specification of the procedures to be followed and the order in
26 which they will be undertaken; and specification of the condition
27 in which the belt and associated housing are to be left at the
28 conclusion of the process. (Decl. of Gratzinger, Ex. N.) The

10

1  Court realizes that the parties should be given an opportunity to
2  suggest additional procedures and/or safeguards in light of the
3  fact that the inspection and testing will occur after trial has
4  begun.
5      The parties therefore are directed to meet and confer and
6  include in their joint pretrial conference statement a plan to
7  proceed pursuant to this order. Specifically, counsel shall
8  determine a time frame whereby the trial can commence, a jury can
9  be seated, opening statements can be made, and Plaintiff's
10 counsel can begin with presentation of evidence consisting of
11 testimony about, and the showing of, the seatbelt mechanism in
12 question to the trier of fact. The extent of the presentation of
13 evidence regarding the seatbelt mechanism at the beginning of the
14 trail before testing remains within the purview of the
15 negotiations of counsel. It is a given that court will need to be
16 recessed for a period of time after the jury is empaneled and
17 after initial presentation of the seatbelt so that the testing
18 that is the subject of this motion can be conducted, allowing
19 time for experts to prepare reports as well as for any
20 depositions to be taken of experts, all within a very tight,
21 shortened time frame. The trial judge has asked this Court to
22 admonish counsel that if they cannot reach an agreement how best
23 to proceed in this unique situation, he/the Honorable Lawrence
24 O'Neill will set up the procedures for the parties. Counsel are
25 directed to include either their stipulation for this procedure
26 in the joint pretrial conference statement or their statement set
27 forth in that same document that no agreement can be reached.
28      Accordingly, it IS ORDERED that

1) Defendant Takata's motion to compel production and further testing of the seat belt IS GRANTED in part; and

2) Counsel for all parties are ordered to meet and confer and present a protocol for testing to Judge O'Neill at the pretrial conference; and

3) Defendant Takata's motion to strike the materials referring to the <u>Davis</u> case in Placer County IS GRANTED, and Plaintiffs' request that the Court take judicial notice of the order or materials from the <u>Davis</u> case IS DENIED.

IT IS SO ORDERED.

Dated: October 25, 2007                    /s/ Sandra M. Snyder
                                           UNITED STATES MAGISTRATE JUDGE