IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE GUERRERO, et al., | CASE NO. CV F 06-1539 LJO SMS |
| Plaintiffs, | **SUMMARY ADJUDICATION DECISION** (Doc. 65.) |
| vs. | |
| GENERAL MOTORS CORPORATION, et al., | |
| Defendants. | |

**INTRODUCTION**

In this automobile products liability action, defendants General Motors Corporation ("GM") and Takata Seat Belts, Inc. ("Takata") seek summary adjudication on plaintiffs Elizabeth Guerrero ("Ms. Guerrero"), Israel Guerrero ("Israel") and Jazmine Guerrero's ("Jazmine's") negligent infliction of emotional distress ("NIED") claims on grounds that Ms. Guerrero, Israel and Jazmine were not contemporaneously aware of plaintiff Monique Guerrero's ("Monique's") paralysis injury. Ms. Guerrero and Israel[1] respond that although they were not immediately aware of the severity of Monique's injuries, they knew she had suffered injury to defeat summary adjudication. This Court considered GM and

---

[1] Jazmine does not oppose summary adjudication of her NIED claim. (Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, page 2, lines 21-22.) As such, this Court will focus on Ms. Guerrero and Israel's NIED claims.

1

Takata's (collectively "defendants'") summary adjudication motion on the record[2] and VACATES the November 13, 2007 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES defendants summary adjudication on Ms. Guerrero and Israel's NIED claims and GRANTS defendants summary adjudication on Jazmine's NIED claim.

## BACKGROUND

### The Parties And Collision

Ms. Guerrero is the mother of Israel, Jazmine and Monique, who are siblings.[3] On April 6, 2006 at approximately 7:30 a.m. in Tehacapi, California, Ms. Guerrero drove a 2005 Chevrolet Tahoe ("Tahoe") sold by GM with Takata's seat belt components. The Tahoe has three seat rows. Jazmine, then age 1½ years, sat directly behind Ms. Guerrero in the Tahoe's second row. Monique, then age 5, sat between Jazmine and Israel, then age 7, in the Tahoe's center middle seat.

After encountering black ice, the Tahoe slid off paved road surface and collided head on into a tree. Monique sustained a fracture to her T-3 vertebrae to cause paralysis from the chest down. Ms. Guerrero and Israel suffered minor injuries.

Plaintiffs allege that at the time of the collision, Monique's lap-and-shoulder seatbelt was in a locked position, as it had been for approximately two months. Plaintiffs further allege that the seatbelt was "stuck in place" because of a design defect to prevent the seatbelt to fit snugly across Monique's chest.

### Post-Collision Events

Immediately after the collision, Ms. Guerrero observed Monique's bloody nose but did not believe Monique was seriously injured. Ms. Guerrero heard Monique, Israel and Jazmine cry. Israel was aware only that Monique had a bloody nose and does not recall whether he saw blood in the Tahoe or that Monique hit anything during the collision. Israel's spotty recollection is that Monique sat back

---

[2] This Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection. This Court thoroughly reviewed and considered the evidence which it deemed admissible, material and appropriate for summary judgment/adjudication.

[3] Ms. Guerrero, Israel, Jazmine and Monique will be referred to collectively as "plaintiffs."

and did not lean forward.

Responding ambulance personnel did not advise Ms. Guerrero that Monique was paralyzed. Ms. Guerrero learned from her husband, who arrived at the collision scene, that Monique was to be transferred to Kern Medical Center by helicopter. Ms. Guerrero believed Monique was airlifted due to an abdominal injury.

When Ms. Guerrero arrived at Kern Medical Center, she believed Monique's injury was limited to abdominal bleeding. When at Kern Medical Center, Ms. Guerrero was not told that Monique was paralyzed. Ms. Guerrero was aware that Monique could not feel her legs and recalled a comment about a swollen spine.

Monique was transported by helicopter from Kern Medical Center to UCLA Medical Center. Ms. Guerrero believed that Monique was transferred because Monique could not move her legs. At 2 p.m., more than six hours after the collision, Ms. Guerrero learned the Monique was paralyzed.

Israel has no fear to ride in automobiles and recalls no nightmares of the collision. Plaintiffs' August 9, 2007 supplemental F.R.Civ.P. 26(a)(1) initial disclosures revealed for the first time a counselor for Ms. Guerrero and Israel. Up to that point, plaintiffs' initial disclosures revealed neither psychiatric nor psychological treatment for Ms. Guerrero and Israel.

Plaintiffs have submitted an expert report that Ms. Guerrero has experienced severe traumatic psychiatric symptoms due to the collision and Monique's injuries. Another of plaintiffs' expert reports indicates that Israel experienced initial fear symptoms of getting into a car after the collision and experiences two to four nightmares a month.

**Plaintiffs' Claims**

Plaintiffs' operative first amended complaint alleges strict liability causes of action against defendants. The first amended complaint also alleges a (fourth) NIED cause of action that Ms. Guerrero and Israel were in close proximity of Monique and experienced "a contemporaneous sensory awareness" of Monique's injuries and the "causal connection" between the injury-causing incidents caused by defendants and Monique's injuries to result in Ms. Guerrero and Israel's "severe emotional distress."

Defendants seek summary adjudication on the NIED cause of action based on absence of contemporaneous sensory awareness of a causal connection between defendants' conduct and Monique's

injury. Plaintiffs respond that Ms. Guerrero and Israel's presence at the time of Monique's injury and awareness that she was injured create factual issues to avoid summary adjudication.

## DISCUSSION

### Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(c), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123

(5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

As discussed below, Ms. Guerrero and Israel has raised factual issues to defeat summary adjudication of their NIED claims.

## **NIED Elements**

In *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072-1073, 9 Cal.Rptr.2d 615 (1992), the California Supreme Court contrasted "bystander" and "direct victim" cases:

> The distinction between the "bystander" and "direct victim" cases is found in the source of the duty owed by the defendant to the plaintiff. The "bystander" cases, commencing with *Dillon v. Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912], and culminating in *Thing, supra,* 48 Cal.3d 644, address "the question of duty in circumstances in which a plaintiff seeks to recover damages as a percipient witness to the injury of another." (*Christensen, supra,* 54 Cal.3d at p. 884.) These cases "all arise in the context of physical injury or emotional distress caused by the negligent conduct of a defendant with whom the plaintiff had no preexisting relationship, and to whom the defendant had not previously assumed a duty of care beyond that owed to the public in general." (*Ibid.*, italics added.) In other words, bystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another.

The parties point to the following NIED elements noted in *Thing v. La Chusa*, 48 Cal.3d 644, 647, 257 Cal.Rptr. 865 (1989):

> In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.

In *Golstein v. Superior Court*, 223 Cal.App.3d 1415, 1427-1428, 273 Cal.Rptr. 270 (1990), the California Court of Appeals explained *Thing*/NIED policy:

> Its [*Thing*'s] policy statement appears to us to be clear: understanding perception of the injury-causing event is an essential component of *Dillon* [NIED] recovery. In the case of an event which cannot be perceived, distress recovery is not allowed. . . . .[W]e interpret *Thing*'s policy statement as a requirement that *Dillon* plaintiffs experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury. As the Supreme Court stated the rule in *Thing*, the plaintiff must be "present at the scene of the injury- producing event at the time it occurs and . . . then aware that it is causing injury to the victim . . . ." ( *Thing v. La Chusa, supra*, 48 Cal.3d at p. 668, fn. omitted.)

Defendants contend that Ms. Guerrero and Israel fail to satisfy *Thing*'s second contemporaneous awareness element.

## Ms. Guerrero And Israel's NIED Claims

Defendants argue that Ms. Guerrero did not experience a contemporaneous sensory awareness of a causal connection between the collision and Monique's paralysis. In their reply papers, defendants note that "the injury plaintiffs contemporaneously witnessed and comprehended (Monique's) bloody nose) is completely different from the later-learned injury (paralysis)." Defendants focus on Ms. Guerrero's deposition testimony that:

1. Immediately after the collision, she merely observed Monique's bloody nose and nothing to indicate serious injury;
2. She did not observe how Monique got from the seat to the Tahoe's floor and was, at that time, unaware of the severity of Monique's injury;
3. She was unaware that Monique was paralyzed after ambulance personnel evaluated Monique;
4. She believed Monique was airlifted due to abdominal pain;
5. When at Kern Medical Center, she understood that Monique suffered from abdominal bleeding and could not feel her legs; and
6. She did not learn of Monique's spinal cord injury until more than six hours after the collision and after Monique had been transferred to UCLA Medical Center.

Defendants further argue that the record lacks facts that Israel, age seven at the time of the collision, "possessed any greater knowledge of Monique's injuries" than Ms. Guerrero. Defendants contend that Israel experienced neither contemporaneous awareness of Monique's injuries nor indicia of emotional distress.

Defendants focus on Israel's deposition testimony that:

1. Immediately after the collision, he unlatched Monique's seat belt and observed only her bloody nose;
2. He did not know whether Monique was struck by objects in the Tahoe; and
3. He lacks fear of riding in cars and experienced no nightmares.

1  Defendants contend that plaintiffs' F.R.Civ.P. 26(a)(1) initial disclosures fail to indicate that Israel
2  suffered "serious" emotional distress.
3         Plaintiffs dispute that Ms. Guerrero and Israel needed to know the full, detailed extent of
4  Monique's injuries.  To support NIED claims, plaintiffs contend that Ms. Guerrero and Israel needed
5  to "meaningfully comprehend" the injury-causing event.  Plaintiffs note that they "were present together
6  in the vehicle at the time of the crash event which resulted in Monique's injuries, and were obviously
7  aware such injury-causing event was taking place."
8         Plaintiffs rely on *Wilks v. Hom*, 2 Cal.App.4th 1264, 3 Cal.Rptr.2d 803 (1992), where the
9  California Court of Appeal upheld NIED damages for a plaintiff mother who did not witness her
10 daughter Jessica's injury from an explosion in an adjacent room.  The Court of Appeal explained:

> Thus, the *Thing* court affirmed that bystander damages may be recovered only by a plaintiff who is present at the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim. . . . Notable is the omission of a requirement that the plaintiff actually "witness" the injury to Jessica as and when it occurred. . . . [W]e conclude it is not necessary that a plaintiff bystander actually have witnessed the infliction to her child, provided that the plaintiff was at the scene of the accident and was sensorially aware, in some important way, of the accident and the necessarily inflicted injury to her child.  Here, although [plaintiff mother] could not visually witness the infliction of injuries to Jessica, she was most evidently present at the scene of the accident, was personally impressed by the explosion at the same instant damage was done to her child, and instantly knew of the likely severe damage to the child.

17 *Wilks*, 2 Cal.App.4th at 1271, 257 Cal.Rptr. at 807.
18        Plaintiffs challenge defendants' points regarding Ms. Guerrero and Israel's lack of
19 contemporaneous knowledge that Monique had become paralyzed during the collision.  Plaintiffs
20 contend that Ms. Guerrero and Israel's NIED claims require that they were "present at the scene of the
21 injury-producing event at the time it occurs and [were] then aware that it is causing injury to the victim,"
22 *Thing*, 48 Cal.3d at 647, 257 Cal.Rptr. 865, or were "sensorially aware, in some important way, of the
23 accident and the necessarily inflicted injury" to Monique," *Wilks*, 2 Cal.App.4th at 1271, 257 Cal.Rptr.
24 at 807.
25        There is no question that Ms. Guerrero and Israel were present at the scene of the collision, the
26 injury-producing event, and perceived it.  Ms. Guerrero and Israel were instantaneously aware that
27 Monique suffered injury.  Defendants fault Ms. Guerrero and Israel's lack of awareness of the severity
28 of Monique's injuries and a "causal connection between the negligent conduct (alleged seat belt defect)

and the resulting injury." However, defendants point to no pertinent authority to require awareness of the degree to which defendants seek to impose on Ms. Guerrero and Israel. Defendants attempt to hold Ms. Guerrero and Israel to an implausible standard of immediate diagnosis of a life-altering injury and causation analysis subject to expertise beyond their abilities under less than conspicuous circumstances. Ms. Guerrero and Israel were "sensorially aware" of the collision and that Monique was injured. Lack of knowledge of the severity of her injury and its causation goes to the extent of NIED damages, not their existence, and in turn raises factual issues to avoid summary adjudication. In other words, the fact that Ms. Guerrero and Israel perceived less than a neck fracture and paralysis resulting from their vehicle's striking a tree may mitigate the severity or degree of their emotional distress subject to their NIED claims but does not eliminate their NIED claims.

In addition, defendants question the cause and severity of Ms. Guerrero and Israel's alleged emotional distress, which defendants attribute to the collision and Monique's paralysis. Defendants argue that there is an absence of "evidence supporting a causal connection between the emotional distress and Monique's bloody nose."

This Court disagrees with defendants' analysis. As explained above, causation and extent of emotional distress is not limited by Monique's bloody nose. Ms. Guerrero and Israel were aware sensorially that Monique was injured in an accident involving the Tahoe. Factual issues as to causation and extent of Ms. Guerrero and Israel's alleged emotional distress provide further grounds to deny summary adjudication.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES defendants summary adjudication on Ms. Guerrero and Israel's NIED claims; and

2. GRANTS defendants summary adjudication on Jazmine's NIED claim.

IT IS SO ORDERED.

**Dated:   November 6, 2007**             /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE

and the resulting injury." However, defendants point to no pertinent authority to require awareness of the degree to which defendants seek to impose on Ms. Guerrero and Israel. Defendants attempt to hold Ms. Guerrero and Israel to an implausible standard of immediate diagnosis of a life-altering injury and causation analysis subject to expertise beyond their abilities under less than conspicuous circumstances. Ms. Guerrero and Israel were "sensorially aware" of the collision and that Monique was injured. Lack of knowledge of the severity of her injury and its causation goes to the extent of NIED damages, not their existence, and in turn raises factual issues to avoid summary adjudication. In other words, the fact that Ms. Guerrero and Israel perceived less than a neck fracture and paralysis resulting from their vehicle's striking a tree may mitigate the severity or degree of their emotional distress subject to their NIED claims but does not eliminate their NIED claims.

In addition, defendants question the cause and severity of Ms. Guerrero and Israel's alleged emotional distress, which defendants attribute to the collision and Monique's paralysis. Defendants argue that there is an absence of "evidence supporting a causal connection between the emotional distress and Monique's bloody nose."

This Court disagrees with defendants' analysis. As explained above, causation and extent of emotional distress is not limited by Monique's bloody nose. Ms. Guerrero and Israel were aware sensorially that Monique was injured in an accident involving the Tahoe. Factual issues as to causation and extent of Ms. Guerrero and Israel's alleged emotional distress provide further grounds to deny summary adjudication.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES defendants summary adjudication on Ms. Guerrero and Israel's NIED claims; and

2. GRANTS defendants summary adjudication on Jazmine's NIED claim.

IT IS SO ORDERED.

**Dated:   November 6, 2007**             /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE